IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CAROLYN HAILEY, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil No. **PJM 18-436** |
| | * | |
| VANESSA WALLER, | * | |
| | * | |
| Defendant. | * | |

**MEMORANDUM OPINION**

Barbara Miller was an employee of the Environmental Protection Agency who had a Federal Employees' Group Life Insurance Policy (the "FEGLI Policy") issued by Metropolitan Life Insurance Company (MetLife) valued at approximately $153,500. The originally named beneficiary of the policy was Vanessa Waller, Miller's daughter. ECF No. 15-2; ECF No. 1 at ¶¶ 6, 10.

In late October 2013, roughly three years before her death in July 2016, Miller suffered a brain hemorrhage, which caused some cognitive impairment. ECF No. 15 at 1, 4. Even so, on August 27, 2014, ten months following her brain hemorrhage, Miller executed a form ("2014 Beneficiary Designation"), changing the designated beneficiary of her life insurance policy, her daughter Vanessa Waller, from 100% to 25% and naming her friend Carolyn Hailey as 75% beneficiary. ECF No. 1 at ¶ 11-12. Following Miller's death, Hailey and Waller filed competing claims to the proceeds of the life insurance policy with MetLife. ECF No. 1 at ¶ 14. Eventually, MetLife filed an interpleader in this Court, joining Hailey and Waller as Defendants, after which MetLife deposited the disputed insurance proceeds with the Court and was dismissed from the case. *See* ECF Nos. 13, 14. This Court recently repositioned the parties, designating Hailey as

1

Plaintiff and Waller as Defendant. *See* 7 Fed. Prac. & Proc. Civ. § 1708 (3d ed.) (2018); FED. R. CIV. P. 22. The case is now styled "Hailey v. Waller."

Events prior to the filing of the present suit are especially relevant. After Miller's death, her nephew Phillip Thornton filed her Last Will and Testament dated April 24, 2014 and a First Codicil dated February 12, 2015 with the Register of Wills for Prince George's County, Maryland. ECF No. 15-1 at 4. Waller filed a caveat to the Will and First Codicil. *Id.* Following a hearing, the Orphans' Court[1] credited testimony proffered by Waller to the effect that Miller lacked capacity to execute the Last Will and Testament and First Codicil in question and set both documents aside. ECF Nos. 15-12, 15-13. No appeal was taken from that decision.

The specific question before the Court in the present proceeding is whether the Orphans' Court's determination as to Miller's lack of capacity to execute the Last Will and Testament and Codicil of April 24, 2014, and February 12, 2015, respectively, has collateral estoppel or *res judicata* effect on the issue of Miller's capacity to execute the August 27, 2014 Change of Beneficiary Designation with respect to her life insurance proceeds.

The Court holds that whatever the evidence may have shown in the proceeding before the Orphans' Court *vis a vis* Miller's mental capacity to execute a will or codicil, that decision cannot collaterally estop nor does it have any *res judicata* effect upon the present proceeding to determine the parties' entitlements to the insurance benefits, for the reason that the Orphans' Court lacked

---

[1] The Orphans' Court styles its title with each word capitalized and a possessive apostrophe after the plural "Orphans." *See generally* https://courts.state.md.us/orphanscourt (last accessed Jan. 31, 2019). At various other times and places, the Court has been referred to with different styling. *See, e.g.,* MD. CODE ANN., EST. & TRUSTS §2-102 I(A) (using each Orphan's court and orphans' court). Except when quoting other courts that have styled it differently, when referring to the Orphans' Court, this Court will use the styling that appears on the Orphans' Court's website.

jurisdiction to decide any issue as between disputing claimants to the proceeds of an insurance policy, which are non-probate assets.

Accordingly, the Court will **DENY** Waller's Motion for Summary Judgment (ECF No. 15) as well as Hailey's Cross-Motion for Summary Judgment (ECF No. 23).

I.     FACTUAL AND PROCEDURAL BACKGROUND

In late October, 2013, Barbara Miller suffered a hemorrhage in her brain which, to at least some degree, caused speech and cognitive defects that diminished her cognitive capacity. Her neurologist, Andrew Stemer, M.D.,[2] concluded that Miller suffered from aphasia as a result of the hemorrhage and had difficulty understanding and speaking, and was susceptible to others' ideas. In a note dated April 17, 2014, Dr. Stemer advised that Miller should not be left to independently manage her finances, stating further that Waller, Miller's daughter, should be consulted regarding all financial transactions. ECF No. 15-4. More specifically, in a deposition introduced in the Orphans' Court proceeding, Dr. Stemer opined that Miller lacked the capacity to execute a Last Will and Testament (and presumably a Codicil) at all relevant times after October 31, 2013. ECF No. 15-5 at 5.

On August 27, 2014, Miller, with the assistance of her friend Carolyn Hailey, but without the knowledge or participation of Waller, visited the office of Miller's attorney, Benjamin Woolery, Esquire, in Upper Marlboro, Maryland. While there, Miller executed a Re-Designation of Beneficiary form for her FEGLI policy, disfavoring her existing beneficiary, Waller, and favoring her friend Hailey. Her signature was witnessed by Sharon Gordon, an Administrative

---

[2] Dr. Stemer is the Director of the Stroke Center at Georgetown University Medical Center. ECF No. 15-3.

3

Assistant in Woolery's office, and Kate Devlin, the firm's Office Manager. ECF No. 15-7. Gordon purportedly had a conversation with Miller in the waiting area of the office during which, according to Gordon, Miller demonstrated that she understood the implications of changing her beneficiary designation. ECF No. 23-3 at 2. Miller, says Gordon, never indicated she was under duress in any form, and specifically told Gordon that she wanted to change her designation to give most of the insurance benefits to Hailey because Waller had been so mean to Miller. Miller further stated that Waller never wanted Miller to do anything by herself, whereas Hailey was willing to take her places and was otherwise helpful to her. *Id.*

Woolery drew up and witnessed the execution of Miller's Last Will and Testament dated April 24, 2014. Following their meeting, Woolery wrote a letter to the Prince George's County Chief of Police stating his view that Miller had been competent during their April meeting and that a police search for Miller at Woolery's office seemed to have been based solely on Waller's word that Miller was not supposed to be out by herself or presumably with anyone else, at least without Waller's permission. ECF No. 23-2 at 50-51. On February 9, 2015, Woolery sent Miller a First Codicil as to Miller, purportedly prepared at her request. ECF No. 23-2 at 2.[3]

As indicated, when Miller's 2014 Will and the 2015 First Codicil were offered in the Prince George's County Orphans' Court, Waller filed a caveat. Following a hearing, the Orphans' Court held that Miller lacked capacity to execute either of those documents and set them both aside. *See* ECF Nos. 15-12, 15-13.

---

[3] Woolery does not state in his affidavit that he witnessed the execution of the Codicil, which, while sent by him to Miller on February 9, 2015, is dated February 12, 2015. The witnesses to the Codicil were Carolyn Hailey and Fairley Hailey. ECF No. 23-7 at 1. Neither Hailey, it may be noted, was in any way named as a taker under either the Will or Codicil.

4

## II. ANALYSIS

### A.

Waller argues before this Court that the Orphans' Court ruling regarding Miller's lack of testamentary capacity to execute the Will and First Codicil has collateral estoppel and/or *res judicata* effect with respect to the attempted 2014 change of beneficiary under Miller's insurance policy, which was signed on a date following the date of the execution of the Will but before the date of the execution of the First Codicil. The core issue, as the Court sees it, which neither party has argued, is whether the Orphans' Court determination that a decedent lacks capacity to execute a Will or Codicil is binding in a subsequent proceeding involving the issue of whether the decedent as insured had the capacity to change a beneficiary under a life insurance policy. Waller argues that the Orphans' Court decision is binding; Hailey's primary argument in this Court is that Hailey was not a party to the probate proceeding and therefore could not be bound by its decision. The latter argument might in a sense be true, if in fact the Orphans' Court had authority to decide the issue—but it did not and does not. Since this is a fundamental issue going to subject matter jurisdiction, it is subject to review at any stage of the proceedings. *See, e.g.*, *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434-35 (2011).

### B.

In Maryland, an Orphans' Court "may conduct judicial probate, direct the conduct of a personal representative, and pass orders which may be required in the course of the administration of an estate of a decedent." MD. CODE ANN., EST. & TRUSTS § 2-102(a). Emphatically, however, the Orphans' Court "may not, under pretext of incidental power or constructive authority, exercise any jurisdiction not expressly conferred." *Id*. This severely restricted jurisdiction has been stressed

by Maryland courts in a myriad of cases spanning over a century. *See, e.g.*, *Lowe v. Lowe*, 6 Md. 347, 352 (Md. 1854) ("The jurisdiction of the orphans court is not general but limited."), *Talbot Packing Corp. v. Wheatley*, 172 Md. 365, 190 A. 833, 835, (Md. 1937) ("It is only in those cases in which property is claimed by the administrator against the estate that the orphans' court is authorized to determine the title thereto"), *Crandall v. Crandall*, 218 Md. 598, 600 (Md. 1959) ("[I]t must be remembered that Orphans' Courts are not courts of general jurisdiction; on the contrary, they are courts of special and limited jurisdiction only"), *Flater v. Weaver*, 108 Md. 668, 71 A. 309, 312 (Md. 1908) ("The orphans' court is restricted to the exercise of powers expressly delegated, which cannot be extended by construction or implication"), *Duca v. United States*, 236 F.Supp. 747, 751 (D. Md. 1964) ("All concerned appear to have ignored the fact that an Orphans' Court in Maryland has no jurisdiction to decide questions of title to real estate."), *Pratt v. Hill*, 124 Md. 252, 92 A. 543, (Md. 1914) ("[T]here are many cases… which determine that, as between an administrator representing the estate and a third person claiming title to the property, [the orphans'] court has no jurisdiction."), *Barter Systems, Inc. v. Rosner*, 64 Md. App. 255, (Md. Ct. Spec. App. 1985) ("A judge of the Montgomery County Circuit Court who sits as a judge in the orphans' court cannot, however, exercise his authority and power as a circuit court judge.").

A second bedrock proposition in this case is that insurance contracts are non-probate assets and are not within the regular purview of Orphans' Court jurisdiction, unless, for example, the policy names the insured's estate as beneficiary. "Although a life insurance policy resembles a will in that it may become operative at death, a life insurance policy is fundamentally different because it is a contractual agreement between insurer and insured." *Cook v. Metropolitan Life Ins. Co.,* 742 F.2d 110, 112 (4th Cir. 1984). *See also, e.g.*, *Karsenty v. Schoukroun*, 406 Md. 469, 488 n.13 (Md. 2008) (mentioning "non-probate arrangements—such as living trusts, life insurance," and others).

6

In the case at hand, giving collateral estoppel or *res judicata* effect to the Orphans' Court decision would grant the Orphans' Court authority to decide who the proper taker of proceeds under the insurance policy, a non-probate asset, would be. There is no question that the Orphans' Court would not be competent to consider—if no Will, Codicil, or intestacy were involved—whether an insured had the mental capacity to change the beneficiary of a life insurance policy. That would be a matter for the Maryland Circuit Court, a court of general jurisdiction, or for a Maryland Federal District Court to decide, perhaps in part as a matter of equity but certainly allowing the possibility of a jury trial on the issue of the insured's mental capacity. *See, e.g.,* 4 Maryland Civ. P. Forms § 56:10 (2d ed.) (Nov. 2018 update), Part 5 (Discussing that while "the former practice of transferring issues of fact arising in an equity case to a court of law for an advisory verdict by a jury was abolished" in Maryland in 1961, in cases sounding in both law and equity, juries may hear the legal issues); *see also Hashem v. Taheri*, 82 Md. App. 269, 272-73 (Md. Ct. Sp. App. 1990). In short, the Orphans' Court cannot accomplish by indirection what it cannot accomplish directly; its decision regarding Miller's mental competence was limited to her testamentary capacity only, i.e., her competence to execute a will or codicil. It cannot bind the parties in this proceeding involving insurance proceeds.

The Court agrees that in Maryland the degree of mental capacity needed to change the beneficiary of one's life insurance policy is the same as that necessary to execute a will. *Wojtczuk v. Oleksik,* 168 Md. 522, 178 A. 261, 265 (1935). But that is not the same thing as saying the Orphans' Court is authorized to decide the issue for any and all purposes.

It is true that the Maryland Court of Appeals has held that the Orphans' Court has authority to construe some written documents that would ordinally fall outside probate jurisdiction, e.g., a marital settlement agreement. Thus in *Kaouris v. Kaouris*, 324 Md. 687, 598 A.2d 1193 (1991),

the court ruled that the Orphans' Court did have jurisdiction to decide the validity of a marital settlement agreement where, as it turned out, the parties had not ever actually divorced. Importantly, however, the reason the Orphans' Court had authority to construe the document was because it was relevant to the question of whether the widow had waived certain rights in the estate under the agreement, such that she may have waived any rights to take in an intestacy. In the pure life insurance context, there is no nexus with the construction of a will, codicil, or intestacy.

Nor does *Clark v. Clark*, No. 94-1166, 1994 WL 669501 (D. Md. Dec. 1, 1994), undermine this analysis. There the Fourth Circuit affirmed the District Court's denial of a party's argument that an Orphans' Court decision on a point of law had collateral estoppel effect. The Prince George's County Orphans' Court had decided that the wife of a decedent was not subject to the so-called "slayer's rule," which precludes any person who intentionally and feloniously causes a decedent's death from benefitting from the decedent's estate (or, in that case, from receiving the proceeds of the decedent's life insurance policy). Believing that the "slayer's rule" might bar the wife from collecting the decedent's life insurance proceeds, the Orphans' Court decision notwithstanding, the carrier, MetLife, filed an interpleader action in federal court to determine whether the proceeds should go to the wife or to the decedent's children, who were named as secondary beneficiaries under the policy.

On summary judgment, the wife argued that the Orphans' Court decision that she was not subject to the slayer's rule collaterally estopped the district court from finding that the proceeds should go to the children. Judge Motz rejected that argument, holding that collateral estoppel did not apply because the children did not have the same incentive to litigate the Orphans' Court case as they did the proceedings in the district court. *Clark*, 2014 WL 669501 at *2-3. The Fourth

Circuit affirmed, noting that a "district court's determination as to the fairness of issue preclusion in a given case is reviewed for abuse of discretion." *Id.* at *3.

The *Clark* opinion can be read in different ways: either that the Orphans' Court might have had jurisdiction to issue a binding decision on the applicability of the slayer's rule had certain prospective beneficiaries been properly incentivized to participate in that court's proceeding, or, alternatively, that the Orphans' Court lacked jurisdiction to bind the district court on the issue of whether the slayer's rule applied. But neither Judge Motz's decision nor the Fourth Circuit's decision are inconsistent with the Court's Opinion here. While both those courts may have focused on the fairness of invoking collateral estoppel under the facts of that case, the underlying jurisdictional issue of the Orphans' Court was not raised. Notably, the Fourth Circuit's opinion is unpublished.

This Court, dealing specifically with the issue of the Orphans' Court's authority to determine an insured's mental capacity to change the beneficiary of a life insurance policy in the ordinary case, holds that the Orphans' Court lacks such authority. The issue of mental capacity in such circumstances is exclusively for a Maryland Circuit Court or, as in the present case, the U.S. District Court to decide.

None of this is to say that the evidence of Miller's lack of capacity to sign the 2014 Beneficiary Designation under the insurance policy is not compelling. The sole consequence of the present decision is that the issue of her capacity must be relitigated in a court of competent jurisdiction, such as this Court.

### III. CONCLUSION

For the foregoing reasons, Waller's Motion for Summary Judgment is **DENIED**, as is Hailey's Cross-Motion for Summary Judgment.

A separate Order will **ISSUE**.

/s/
**PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE**

**February 4, 2019**